UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TAMMY J. DOWNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CV-0228-CVE-PJC |
| | ) | |
| NOVARTIS PHARMACEUTICALS | ) | |
| CORPORATION and MITCHELL D. | ) | |
| BOULANGER, individually and in the Course | ) | |
| and Scope of his Employment as an Employee | ) | |
| of Novartis Pharmaceuticals Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court are Defendant Novartis Pharmaceuticals Corporation's Motion to Dismiss
Plaintiff's Second, Third, Fourth, Fifth, Sixth and Eighth Causes of Action and Combined Brief in
Support (Dkt. # 6) and Plaintiff's First Motion for Leave to Amend Complaint (Dkt. # 22). Plaintiff,
Tammy J. Downs, sues defendants for racial and sexual harassment and discrimination in violation
of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended, et seq. (Title VII),
assault, battery, intentional infliction of emotional distress, negligent retention and supervision,
breach of contract, workers' compensation retaliatory discharge, and exemplary damages.

## I.

Plaintiff, an African-American female, was an employee of Novartis Pharmaceuticals
Corporation (Novartis). Dkt. # 2, at 3. She was hired on July 20, 2006 as a pharmaceutical sales
consultant in the Tulsa North, Oklahoma District of the Dallas, Texas regional sales office. Id.
Plaintiff claims that, prior to the incidents alleged in her complaint, she had a strong record for both
performance and attitude; she received a merit salary increase on March 13, 2007. Id. at 4.

Defendant Mitchell D. Boulanger was plaintiff's co-worker at Novartis; he was also employed as a pharmaceutical sales consultant. Id. Plaintiff was the only African-American, and frequently the only woman, to work in her regional sales office and alleges that she was "mistreated on almost a daily basis by Defendant Boulanger" on the basis of her race and gender. Id. Specifically, plaintiff claims that Boulanger publicly threatened plaintiff with bodily harm, verbally discouraged her from attending company events, humiliated her, and used profanity when addressing plaintiff in the presence of other co-workers. Id.

On or about May 4, 2007, plaintiff was on a work assignment for Novartis at a medical clinic in Owasso, Oklahoma, when Boulanger unexpectedly arrived at the clinic. Id. Plaintiff and Boulanger went to the back of the clinic with Dr. Armstrong, the clinic physician and Boulanger's personal friend. Id. According to plaintiff, Dr. Armstrong and Boulanger discussed a line of skin care products developed by Dr. Armstrong that "Boulanger planned to market outside the scope of his employment by Defendant Novartis." Id. Plaintiff alleges that the marketing of Dr. Armstrong's products would be a violation of Novartis' conflict of interest policy, which is set forth in the Novartis Code of Conduct (the Code). Id. at 5, 11. After the meeting, as plaintiff and Boulanger were exiting the clinic, Boulanger allegedly "grabbed Plaintiff's arm, yanked Plaintiff's body close to his own body, and threatened to kill Plaintiff" if she discussed the conversation between Dr. Armstrong and Boulanger. Id. at 5. Plaintiff alleges that on May 17, 2007, at a luncheon with other co-workers, Boulanger yelled at her using profanity, and harassed and threatened her "in relation to his dealings with Dr. Armstrong." Id. As a result of Boulanger's conduct, plaintiff allegedly feared for her safety, and suffered severe headaches and "other stress-induced symptoms that required medical treatment." Id.

2

Plaintiff alleges that Novartis "had knowledge of Defendant Boulanger's racial and sexual hostility, propensity to commit racially and sexually motivated and discriminatory acts, intentional torts, and negligent acts against Plaintiff because Plaintiff verbally notified Defendant Novartis through her supervisors on several occasions regarding the discrimination that Plaintiff suffered." Id. Plaintiff also alleges that she informed Novartis of Boulanger's possible violation of the conflict of interest policy.  According to plaintiff, employees are expected to report violations of the Code to their supervisors, and there would be no "retaliation or penalty for such reporting." Id. at 11. Plaintiff alleges that, in response, Cheryl McIntosh, a Novartis district manager, told plaintiff to "stand up" to Boulanger and mentioned that Wynn Marsh and Yvette Phillips, other female Novartis employees, had successfully "stood up" to Boulanger in the past.  Id. at 6.  Plaintiff alleges that McIntosh also told plaintiff to "get some rest by taking time off work."  Id.

According to plaintiff, Boulanger's discriminatory actions continued throughout the summer of 2007, and as a result, plaintiff's performance suffered.  On September 15, 2007, plaintiff sent a confidential letter to McIntosh, reporting Boulanger's alleged discrimination and breach of company policy, and asking for intervention from management.  Id.  After plaintiff sent the letter to McIntosh, she "began to be treated with increasing hostility by other members of Defendant Novartis' management team!"  Id.  She alleges that other members of the management team started "portraying Plaintiff as incompetent, and retaliating against Plaintiff with unearned complaints about her job performance and less desirable job assignments." Id. at 7.  Plaintiff alleges that she suffered additional stress-related health issues, requiring her to take time off of work from late September through early October 2007.  Id.

On September 26, 2007, plaintiff obtained an emergency protective order from the Wagoner County District Court against Boulanger.  Id.  When plaintiff returned to work on October 7, 2007, she provided Novartis with notice of the emergency protective order.  On October 22, 2007, plaintiff was notified that her employment was to be terminated, effective October 23, 2007.  Id.  Plaintiff alleges that as a result of Boulanger and Novartis' actions she suffered additional emotional distress and was under psychiatric care from November 2007 through January 2008.  Id.

On June 16, 2008, plaintiff filed a complaint with the Oklahoma Human Rights Commission and on or about November 6, 2008, filed a complaint with the United States Equal Employment Opportunity Commission.  Dkt. # 2, at 2.  She received a "right to sue" letter on January 16, 2009. Id.  She filed this complaint on April 16, 2009.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted.  A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level."  Id. (citations omitted).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Id. at 563.  For purposes of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant.  Id. at 555-56; Alvarado v. KOB-TV, L .L.C., 493 F.3d 1210, 1215 (10th

4

Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).

However, a court need not accept as true those allegations that are conclusory in nature. Erikson

v. Pawnee County Bd. of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations

omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state

a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Defendant moves to dismiss plaintiff's second through sixth and eighth claims for relief.

Plaintiff's intentional tort claims will be addressed jointly; her other claims will be addressed in turn.

**A.    Intentional Tort Claims (Second, Third, and Fourth Claims)**

Plaintiff alleges that Novartis committed the following intentional torts: assault, battery, and

intentional infliction of emotional distress (IIED). As it appears that plaintiff proceeds on the theory

of vicarious liability or respondeat superior, defendant moves to dismiss plaintiff's intentional tort

claims on the ground that an employer cannot be liable for the intentional torts of its employee

occurring outside the scope of employment.[1]

Under the theory of respondeat superior or vicarious liability, an employer is liable for the

willful torts of an employee acting within the scope of his employment in furtherance of his assigned

duties. Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 161 (Okla. 2008) (citing N.H.

v. Presbyterian Church (U.S.A.), 998 P.2d 592, 598 (Okla. 1999)). Generally, an assault on a third

person is not within the scope of an employee's employment. Baker v. Saint Francis Hosp., 126

---

[1]    In the alternative, defendant argues that the Oklahoma Worker's Compensation Act
(OWCA), OKLA STAT. tit. 85, § 1, et seq., is the exclusive remedy for any injuries suffered
by plaintiff resulting from Novartis' allegedly negligent or intentional conduct. However,
because the Court dismisses plaintiff's intentional tort claims against Novartis on other
grounds, the Court need not address defendant's OWCA argument.

P.3d 602, 605 (Okla. 2005) (citing <u>Rodebush v. Oklahoma Nursing Homes, Ltd.</u>, 867 P.2d 1241, 1245 (Okla. 1993)).  There is an exception to the general rule where the act is "incidental to and done in furtherance of the business of the employer."  <u>Id.</u>  However, the exception pertains to situations where the employee was "acting within the scope of authority to do the particular thing rightfully that was subsequently done in a wrongful manner."  <u>Id.</u> (citation omitted); <u>see</u> <u>also</u> <u>Rodebush</u>, 867 P.2d at 1245 (finding that the exception to the general rule applies where the act is "fairly and naturally incident to the business" and is done with "some impulse of emotion which naturally grew out of or was incident to the attempt to perform the mater's business").

Here, Boulanger was clearly acting outside the scope of his employment when he allegedly physically and verbally abused plaintiff.  Boulanger, a sales consultant, was not authorized by Novartis to perform the type of task where one might expect physical contact to result.  Plaintiff cannot claim that the alleged conduct resulted from an impulse stemming from, growing naturally out of, or incident to an attempt to perform work on behalf of Novartis.  <u>See</u> <u>Rodebush</u>, 867 P.2d at 1245.  Thus, Boulanger's alleged conduct does not fall within the exception to the general rule that

an employer is not liable for the intentional torts of its employees.  Plaintiff's claims for assault,

battery, and IIED[2] against Novartis are dismissed.

**B.      Negligent Supervision and Retention (Fifth Claim)**

Defendant moves to dismiss plaintiff's claim for negligent supervision and retention because

plaintiff does not specifically allege that Novartis was aware of Boulanger's allegedly violent

tendencies prior to the occurrence of the alleged assault and battery.  An employer may be held

liable for negligent supervision "if --at the critical time of the tortious incident--, the employer had

reason to believe that the person would create an undue risk of harm to others.  Employers are held

liable for their prior knowledge of the servant's propensity to commit the very harm for which

damages are sought." Escue v. Northern OK College, 450 F.3d 1146, 1156 (10th Cir. 2006) (citing

New Hampshire v. Presbyterian Church (U.S.A.), 998 P.2d 592, 600 (Okla. 1999)) (internal

quotation marks omitted).  Although plaintiff's allegations are a bit unclear, she appears to allege

that she verbally notified Novartis of Boulanger's "intentional torts." Dkt. # 2, at 5.  While plaintiff

does not specifically allege that Novartis was on notice of Boulanger's propensity to act abusively

prior to the alleged assault and battery, the Court is obligated to view the allegations in the light

---

[2]      With regard to IIED, Oklahoma courts have recognized a cause of action for intentional
infliction of emotional distress, also known as the tort of outrage.  See, e.g., Gaylord
Entertainment Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998).  To prevail on a claim of
IIED, plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the
defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the
plaintiff emotional distress; and (4) the resulting emotional distress was severe." Schovanec,
188 P.3d at 175.  Plaintiff concedes that the sole basis for her IIED claim against Novartis
is vicarious liability.  As discussed, an employer cannot be vicariously liable for the
intentional torts of its employees acting outside the scope of their employment, unless the
act is incidental to and done in furtherance of the employer's business.  Harassment,
discrimination, and IIED are not in the furtherance of Novartis' business.  Plaintiff cannot
state a claim for IIED against Novartis.

most favorable to plaintiff.  Accordingly, the Court finds that plaintiff's allegation of negligent supervision is sufficient to withstand a motion to dismiss.  Moreover, as to plaintiff's claim for negligent retention, plaintiff specifically alleges that, on several occasions, she informed Novartis of the alleged "abusive actions" by Boulanger.  Dkt. # 2, at 7.  Therefore, taking all allegations in the complaint as true for the purposes of this motion to dismiss, plaintiff states a claim for negligent retention.

**C.       Breach of Contract (Sixth Claim)**

Defendant moves to dismiss plaintiff's sixth claim for breach of contract.  Plaintiff alleges that the Code constitutes a "significant part" of the employment contract between plaintiff and Novartis, and that "contract" was breached when Novartis allegedly retaliated against plaintiff for reporting Boulanger's actions to her supervisor.  In Oklahoma, an employee handbook may form an implied contract if the following four traditional contract requirements are met:  "(1) competent parties; (2) consent; (3) a legal object; and (4) consideration."  Gilmore v. Enogex, Inc., 878 P.2d 360, 368 (Okla. 1994).  However, any promises in an employee handbook which purport to restrict the employer's power to terminate employment "must be in definite terms-- not in the form of vague assurances."  Id.  See also Tsotaddle v. Absentee Shawnee Housing Authority, 20 P.3d 153, 158 (Okla. Civ. App. 2000) ("A principal limitation upon recognition of implied contracts via an employee handbook or personnel policy is that the promises in the employee manual must be in definite terms, not in the form of vague assurances.").

Plaintiff represents that the Code promises not to retaliate against employees who report misconduct, and her termination was a breach of contract.  Defendant argues that the Code does not form an implied contract because there is no consideration beyond plaintiff's services as an

employee.  However, even assuming that an implied contract was formed, the Code does not, in

"definite terms," restrict Novartis' power to discharge an employee.  The Court finds that a promise

not to "retaliate" is a "vague assurance," and as such cannot form the basis of a claim for breach of

implied contract.  Thus, to the extent that plaintiff's claim for breach of contract is based on the

Code, plaintiff fails to state a claim for breach of contract against Novartis.  However, plaintiff

alleges that the Code was only a "significant part" of plaintiff's employment contracting, implying

that an express contract existed.  Dkt. # 2, at 11.  Insofar as plaintiff alleges that there was an express

employment contract,[3] and defendant breached the terms of the express contract, plaintiff's claim

for breach of contract survives defendant's motion to dismiss.  Construing the allegations in a light

most favorable to plaintiff, the Court finds that the complaint is sufficient to state a claim for breach

of express contract upon which relief may be granted.

**D.      Exemplary Damages (Eighth Claim)**

        In the complaint, plaintiff includes "exemplary damages" as an independent claim for relief.

Defendant moves to dismiss plaintiff's claim for exemplary damages on the ground that exemplary

damages are an element of relief, not a separate claim.  See Bennett v. McKibben, 915 P.2d 400, 405

(Okla. Civ. App. 1996) (citing Rodebush, 867 P.2d at 1241).  Plaintiff concedes that exemplary

damages is not a separate claim, and requests leave to amend the complaint to request exemplary

damages for each of the underlying claims.  Rule 15(a) provides that "leave [to amend] shall be

freely given when justice so requires."  Minter v. Prime Equipment Co., 451 F.3d 1196, 1204 (10th

Cir. 2006).  Defendant's motion to dismiss plaintiff's eighth claim is granted.  Insofar as plaintiff

---

[3]      The Court offers no opinion as to whether an express employment contract existed between
        plaintiff and Novartis.

9

intends to file an amended complaint (see IV infra), she can clarify the relief sought as to each remaining claim.

## IV.

Finally, plaintiff moves to amend the complaint to include a ninth claim:  violation of 42 U.S.C. § 1981 by defendant Novartis.  See Dkt. # 22.  Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires."  Minter, 451 F.3d at 1204; Bradley v. Val-Mejias, 379 F.3d 892, 900 (10th Cir. 2004).  "In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance . . . the leave sought should, as the rules require, be 'freely given.'"  Foman v. Davis, 371 U.S. 178, 182 (1962).  There is no suggestion of any undue delay, bad faith or dilatory motive and plaintiff represents that defendants have agreed to plaintiff's motion.  Accordingly, plaintiff is granted leave to amend her complaint.

**IT IS THEREFORE ORDERED** that Defendant Novartis Pharmaceuticals Corporation's Motion to Dismiss Plaintiff's Second, Third, Fourth, Fifth, Sixth and Eighth Causes of Action and Combined Brief in Support (Dkt. # 6) is **granted in part and denied in part**:  it is **granted** as to the second, third, fourth, and eighth claims for relief; it is **denied** as to the fifth and sixth claims for relief.

**IT IS FURTHER ORDERED** that plaintiff's First Motion for Leave to Amend Complaint (Dkt. # 22) is **granted** for the reason stated therein.  Plaintiff shall file an amended complaint within **eleven days** of the filing of this opinion and order.

**DATED** this 7th day of July, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT